## JERNIGAN v. WAINER.

Evidence that two or more persons conspired to commit a fraud upon another, and did commit it, is sufficient evidence to authorize a verdict against them all for the damages sustained, although there be no positive proof that they all participated in the profits of the fraud.

The testimony of one witness, that the character of another witness, for veracity, is bad, will not prevent the jury from comparing the testimony of the latter with the facts proved by other witnesses, and giving to the same such weight as they deem it entitld to in the particular case.

A new trial in order to obtain the testimony of a witness whose testimony could not be obtained before trial, may be refused on the ground that the facts proved in the case render his testimony unworthy of credit.

Appeal from Panola. Action by Wainer against Wm. A. Jernigan, Ephraim Root and one Albright, for a fraudulent combination and conspiracy to defraud him in the running of a horse race; amount bet $1000, in cash, notes and other property; damages laid at $5000; race was run in March, 1850; verdict and judgment, December, 1853, for $1480. There was no service on Albright, and before going into the trial, plaintiff dismissed as to him. The betting was between Root and Wainer. The horses belonged to Root and Albright respectively. Jernigan held the stakes. The evidence showed that there was a conspiracy between the defendants in pursuance of which the race was made up, and Albright rode his own horse, which was much the faster horse, and held him up so as to let Root's horse come out ahead.

There were no patrol judges around the track; (it was a mile race;) and the judges decided in favor of Root's horse, (as one of them testified,) because he came out ahead.

There was an attempt to prove that Wainer acquiesced and recognized the race as *bona fide*, by authorizing Jernigan to collect one of the notes which were bet. But it amounted to no more than proof of acquiescence through intimidation; Root having jerked him down and kicked him when he complained of being swindled.

After the Judge's first charge, the record continued, " And " at the request of defendants, I charge you, that if Wainer, " after a knowledge of the fraud, freely and without restraint " dealt and acted on the subject matter of said fraud with de-" fendants, with a view to his profit; if the proof shows such " to be the fact, then in such case plaintiff is not entitled to recover."

Motion for new trial on the ground

1st. The jury found contrary to law and the evidence.

2nd. The Court erred in inserting the words " with a view to his profit" in the charge asked by defendants. (The fact does not appear upon the record.—Reps.)

3rd. For misjoinder of parties as to Jernigan, the proof not showing that he had any interest in the subject matter of the suit.

4th. That defendants might obtain the testimony of Albright, who had been made a competent witness by the dismissal of the action as to him on the eve of trial.

Motion overruled. Defendant Jernigan appealed.


*D. Field*, for appellant. The only questions presented by the record in this cause are two, 1st. Whether the evidence was sufficient to sustain the verdict ? 2nd. Did the Court err in refusing to grant a new trial, on the grounds presented in defendant's application ?

I. It devolved on the plaintiff in the Court below to prove that there was a fraudulent combination formed against him by the appellant. Fraud cannot be presumed, but must be proven. (Turner v. Lambeth, 2 Tex. R. 365.) It is admitted that fraud may be proven by circumstances or facts which will not admit of any other conclusion consistent with fair dealing. (Tompkins & Co. v. Bennett, 3 Tex. R. 36.) The doctrine laid down in the case of Graham v. Roder, (5 Tex. R. 141,) does not overrule the doctrine of the cases of Turner v. Lambeth, and Tompkins & Co. v. Bennett, but conforms strictly to

the doctrine settled in those two cases. The fact whether fraud has been committed or not, must not be left to inference. By looking to the facts of the case under consideration, it will be seen that there are no such circumstances developed therein as is required by the rule before mentioned, to sustain an allegation of fraud. It is a well settled principle that where the jury find a verdict without or against evidence, their verdict will be set aside. (Davidson v. Edgar, 5 Tex. R. 492.)

II. The question as to the sufficiency of the appellant's showing for a new trial claims our attention next. The principal ground presented therein is the testimony of Lewis Albright, which he presents as occupying the position of newly discovered evidence, for the reason that appellant was prevented from having the benefit of his testimony by the act of the plaintiff in joining him as a defendant, in which capacity he continued until the parties had announced themselves ready for trial. The appellee in dismissing him from the record as a defendant, made him a competent witness for his co-defendants. (1 Greenl. Ev. 356, 357.)

III. The judgment is bad as to defendant Jernigan, for the reason, that if concerned in the matter at all, it was only as a participant; and a mere participation in a fraud, is not sufficient to render a party liable therefor. (Johnson v. Davis, 7 Tex. R. 173.)

*L. D. Evans*, also, for appellant. I. The appellee, with a full knowledge of all the facts, recognized the race, and voluntarily authorized Jernigan to collect the note on Levi & Brother, of Shreveport, and pay over to Root. He was thereby, forever precluded from repudiating the contract. (Chitty on Contracts, 408, 633, 680.) This principle of law, the Court in its charge most erroneously restricted by the use of the word " with a view to his profit." (The record reads as if the charge was given as asked for by the defendants.—Reps.)

II. However it may stand with Root, certainly the judgment against Jernigan should be reversed, for there is no evi-

dence tending to prove that he had any interest in the race, or divided with Root any part of the spoil. We have seen in the case cited from 7 Tex. R. 173, that a mere participation in the fraud practised, is not sufficient of itself to render Jernigan liable. The appellee is seeking on the plea of fraud, to rescind a racing contract and recover his losings. He must, therefore, look alone to Root, and to those, if any, who participated with Root, not in the fraud, but in the contract.

Jernigan may have acted as friend, or as agent of Root to induce Wainer to make the race to rope him in. Still he is not liable. He might have been made a party defendant to a petition seeking discovery, and held liable for costs only. (2 Story, Eq. Sec. 1500.) The Court certainly mistook in its charge, the law of this authority, as also the law of vindictive damages. Courts of Justice have little to do with the moral code of sportsmen.

The judgment against Jernigan rests upon no surer foundation than circumstances of mere suspicion, upon a suspicion of a suspicion. That Wainer, in the race, was thrown off, is only a suspicion; that Jernigan participated in the swindle is a mere suspicion; that he got any part of the spoil is the merest suspicion, resting alone upon a vague general suspicion against gamblers.

In Story Eq. Sec. 190, it is held that circumstances of mere suspicion, leading to no certain result, will not be deemed sufficient ground to establish fraud.

*Henderson & Jones*, for appellee. The charge complained of was given at the request of the appellants, and cannot be assigned for error. (5 Tex. R. 212.)

If they wanted Albright's testimony, why did they not apply for a continuance on that ground.

The evidence warrants Jernigan's hand in the conspiracy.

Wheeler, J. The principal question in the case is whether

there was evidence sufficient to warrant the verdict, as to the defendant Jernigan. That a gross and flagrant fraud and outrage was practiced upon the plaintiff, there can be no question. That there was a combination and conspiracy to cheat, defraud and deprive him of his property is placed by the evidence beyond a doubt. The defendant Root was a principal conspirator. Albright must have been a participant; and the evidence leaves little room to doubt that the appellant was also a participant, and as deeply implicated in the fraud as either of his confederates.

Frauds, of the character of that disclosed by the record, can seldom be proved by direct and positive evidence. When men enter into conspiracies, they are not likely to call in a witness. They resolve their schemes clandestinely and in secret. Their purpose is imposition and deception ; and secrecy is necessary to its accomplishment. In such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only by the inferences and deductions which men properly and naturally draw from the acts of others in such cases, that their intentions can be ascertained. They are not likely to proclaim them in the hearing of witnesses. Independently of the deposition of the witness Beaty, the evidence, we think, was sufficient to warrant the jury in the belief that the appellant was a participant in the fraud practiced upon the plaintiff, and interested in the profits which it was proposed to derive from it ; and if the witness Beaty was entitled to credit, it is scarcely possible to resist the conviction, that the appellant was not only an active participant, but the principal instrument in the deception and wrong practiced upon the plaintiff. In the attempt to impeach his testimony, two witnesses testified ; one as to his character for honesty, and one as to his character for veracity, and that it was bad. Without inquiring into the sufficiency of this evidence effectually to impeach the character of the witness for truth and veracity, it will suffice to remark, that, one of these witnesses was the brother of the defendant, and that his was the only testimony in the case

which was irreconcilable with that of the witness impeached, and that only as to some minor particulars; and that the witness's statements were corroborated in the main, by the other evidence in the case.   There was no discrepancy or inconsistency in his statements; and they were not improbable in view of the facts disclosed by the other witnesses.   Under the circumstances, it was, we think, proper for the jury to weigh his statements, and decide upon the truth of the facts to which he deposed; and we see no cause to be dissatisfied with their verdict.

We do not think the evidence showed such a subsequent dealing with the subject matter of the contract; or such voluntary acquiescence by the plaintiff in the fraud practiced upon him, as, under the circumstances of the case, to preclude his right of action.

We deem it unnecessary to review the evidence.   The questions submitted to the jury were questions of fact, of a character peculiarly within their province to decide.   The law applicable to the facts in evidence was given them in a clear and succinct charge by the Court, quite as favorable to the defendants as they had the right to ask.   And we see no reason to apprehend that injustice was done them by the verdict.

The application for a new trial was to obtain the testimony of Albright, by whose active agency the fraud was consummated.   The evidence leaves no doubt that he was *particeps criminis* in the fraud; a confederate, equally implicated with the other defendants; and equally liable to be held pecuniarily responsible for its consequences.   His testimony, if obtained, would have tended directly either to inculpate or exculpate himself; either to charge or discharge him from civil responsibility to the plaintiff.   He, therefore, if competent to testify was not worthy to be believed.   And there manifestly was no error in refusing to grant a new trial for the purpose of enabling the defendants to obtain his testimony.

The judgment is affirmed.

Judgment affirmed.