## JOHNSTON et al. v. ANDRADE.
### No. 12709.

Court of Civil Appeals of Texas. Fort Worth.
Oct. 15, 1932.

Rehearing Denied Dec. 3, 1932.

Mayer & Rowe, of Fort Worth, for appellants.

Slay & Simon, of Fort Worth, for appellee.

LATTIMORE, J.

In December, 1929, appellee was the owner of a contract to buy an oil interest in some mineral land which we denominate the McKenzie contract. In January he transferred the title to such interest to appellant in a writing which gave appellant full working control of the McKenzie contract and bound appellant to pay to appellee one-half of the net profits therefrom. In February the parties to this suit were sued by the Sun Oil Company, along with the Pure Oil Company and some other parties also interested in the land of which the McKenzie farm was a part. This suit was anticipated by these parties in making the deal in January.

In defending that suit, appellant and appellee employed, among others, E. E. Hubman as attorney. On March 8, 1930, Hubman made a proposition to appellee that he (appellee) sell his undivided one-half interest in the McKenzie contract, and appellee did assign his said interest to Hubman and received Hubman's check therefor for $5,000. Hubman, on March 10, 1930, assigned the same to appellant. On March 13, 1930, appellant settled his suit with the Sun and Pure Oil Companies by which he received for the McKenzie contract $70,000. Andrade thereupon sued Johnston and Hubman for fraud, alleging that they knew this settlement was imminent

and that they conspired to acquire his interest by fraud, and that "in pursuance of such fraudulent scheme the defendant, Johnson, procured the defendant, E. E. Hubman to call upon plaintiff and represent to the plaintiff that certain disinterested parties, strangers to said transaction, wanted to buy the plaintiff's interest in said contract; and the said Hubman did, on, towit, the 8th day of 'March, 1930, come to the office of this plaintiff in Dallas, Texas, and did represent to the plaintiff that he, the said Hubman, had a party residing in Colorado, who was willing to purchase the interest of the plaintiff in said contract and pay the plaintiff therefor the sum of $5,-000.00. That the said Hubman represented to the plaintiff at said time that said contract was involved in endless litigation; that a suit filed and then pending by the Sun Oil Company against the defendant Johnston to cancel same, was a dangerous one, and that there was very little chance to win the suit, and that said interest of plaintiff would likely be lost and the plaintiff would obtain nothing for his interest in said contract; that said Colorado parties were willing and able to take a chance on recovery, and would pay said sum for plaintiff's said interest. The said defendant Hubman further represented that the defendant, J. P. Johnston, plaintiff's partner in said transaction, had no interest in purchasing said interest of the plaintiff, was not an interested party and had nothing to do with said purchase, and would obtain no benefits therefrom; and the said Hubman further represented that neither the Pure Oil Company nor the Sun Oil Company were interested in acquiring said McKenzie lease, or the contract of the plaintiff, or the interest of the said McKenzie, or this plaintiff, or said Johnston, or of settling said suit, and further represented that no negotiations for settlement with the Pure Oil Company or the Sun Company were then pending; and in truth and in fact that the said Pure Oil Company and said Sun Oil Company would not settle said suit, neither would they pay anything for the interest conveyed by the said McKenzie to the said Fowler, and which was subsequently acquired by this plaintiff and conveyed to the said Johnston as hereinabove set out," with appropriate allegations auxiliary thereto.

On submission to a jury, a verdict was on special issues and judgment thereon for plaintiff against both defendants, who appeal.

 While the petition does not in so many words allege that the representations "were untrue," it does allege at length what the true facts were and that said representations were made pursuant to a plan to obtain thereby the interest of appellee. Allegations of facts are better pleading than to allege only the conclusions to be drawn from the facts, and should control. The general demurrer was properly overruled.

 Plaintiff pleaded specifically that Johnston procured Hubman to go to appellee as Johnston's agent, and that Hubman made the representations to appellee as the agent of Johnston. True, the plaintiff names specifically only one misrepresentation that Johnston told Hubman to make, to wit, that he (Hubman) was representing some Colorado people, strangers to the deal. However, Hubman went as a conspirator, and as an agent of an undisclosed principal, Johnston, by the instruction of the latter who authorized him to practice the named deception on Andrade, and who received the benefits of the misrepresentations and retains the same, after knowledge of same, the while denying his responsibility therefor. "It would indeed be a monstrous doctrine, to hold that a principal may speculate upon and enjoy the fruits of the frauds of his authorized agent, and incur no responsibility to the injured parties. * * * Such a doctrine can have no sanction in morals or law." Wright v. Calhoun, 19 Tex. 412. That case was one of disclosed agency. The rule is doubly sound in a case where the agent, on the order of the principal, keeps his principal undisclosed, thus preventing his being required to state what authority he had given. That some links in the chain of conspiracy by Johnston to defraud have been forged from circumstantial evidence, and in the face of a flat denial thereof by the defendants, does not weaken the finding of the jury. Jernigan v. Wainer, 12 Tex. 189. The court, therefore, was correct in allowing Andrade to testify to all of the statements pleaded as having been made by Hubman to procure the assignment of the McKenzie contract to him.

This also disposes, for the same reasons, of the complaint that testimony was insufficient to show Hubman's agency. The second, third, tenth, and eleventh assignments are therefore overruled, and this also disposes of the issue of want of pleading as grounds for the 4, 5, 6, 7, 8, 9, 13, and 14 assignments of error.

 The court did not submit to the jury the issue of the falsity of the representations alleged except as to whether negotiations with the Pure Oil Company were in progress on March 8, 1930. As to the fact that Hubman misrepresented who his principal was, and that he represented that the McKenzie contract was involved in endless litigation, they were undisputably false, and the latter, a matter of opinion, is found by the jury not to have been made in good faith. Hence the refusal to submit the issue of their falsity was proper. It was error to refuse to submit to the jury the issue of falsity of the representations inquired about in question eight. This error was harmless in view of the establishment as untrue of other representations. Assignments 4, 5, 6, 7, 8, and 9 are overruled.

 Aside from the question of whether the pleading alleges properly or the charge

submits fully the misrepresentations and their legal subsidiaries, we think the case should be affirmed in this: It is undisputed that Johnston held the legal title to the McKenzie contract, half of it in trust for Andrade. Hubman was their attorney. Appellants, each, therefore, owed appellee the duty to fully disclose the situation to Andrade. The latter was not required to prove affirmative misrepresentation. It is enough that the jury have found on sufficient evidence that Johnston and his agent, Hubman, withheld facts from Andrade which, if he had known such facts, would have altered his willingness to sell at $5,000. The verdict finds that Hubman knew negotiations were pending with the Pure Oil Company to settle for a large sum of money; that he was not acting for a principal, stranger to the McKenzie contract; that he did not disclose these facts to appellee; that had Andrade known the full facts, he would not have sold for $5,000. This was an actionable breach of a fiduciary relation.

There was ample evidence that negotiations with the Pure Oil Company were pending on March 8, 1930. Assignment 13 is overruled.

The judgment of the trial court is affirmed.